1

2

3

4

5

6

7

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

San Francisco Division

| | |
|---|---|
| MATTHEW GALLEGOS,<br><br>           Plaintiff,<br><br>        v.<br><br>ROMAN CATHOLIC ARCHBISHOP OF<br>SAN FRANCISCO,<br><br>           Defendant. | Case No.  16-cv-01588-LB<br><br>**ORDER ON MOTION TO STRIKE**<br>[Re: ECF No. 9] |

## INTRODUCTION

    This is a Title VII retaliation suit. Plaintiff Matthew Gallegos works at Archbishop Riordan

High School in San Francisco. This school comes under the auspices of the corporate defendant,

the Roman Catholic Archbishop of San Francisco, who is Mr. Gallegos's employer. (Compl. –

ECF No. 1 at 1-2.)[1] Mr. Gallegos complains that the Archbishop has subjected him to adverse

employment actions, or has facilitated those acts, in retaliation for Mr. Gallegos's reporting

inappropriate behavior by faculty members at Riordan. (*Id.* at 2-5 [¶¶ 7-12].) Mr. Gallegos brings

one claim, for retaliation, under 42 U.S.C. § 2000e-3(a). The defendant now moves, under Rule

12(f) of the Federal Rules of Civil Procedure, to strike various allegations from the complaint. The

parties have consented to magistrate jurisdiction. (ECF Nos. 13-14.) This motion can be decided

---

[1] Record citations are to material in the Electronic Case File ("ECF"); pinpoint citations are to the ECF-generated page numbers at the top of documents.

1    without oral argument. *See* Civil L.R. 7-1(b). The court strikes a small part of the challenged
2    allegations, as described below, but otherwise denies the defendant's motion.

3

4                                        **STATEMENT**

5    **1.    The underlying events**

6          The complaint alleges the following.[2] Mr. Gallegos was working as Riordan High School's
7    library director when his supervisor "showed him a pornographic image" on a smartphone.[3] "Mr.
8    Gallegos told [the supervisor] that his conduct was inappropriate, particularly in light of his
9    leadership position" at Riordan.[4] The supervisor then "began subjecting to Mr. Gallegos to
10   retaliation including . . . demoting him from his position of Library Director."[5] The supervisor
11   continued showing such images to "others at the school," and tolerated similar behavior by
12   another teacher.[6] "Mr. Gallegos, along with other school employees," then went up the chain of
13   command, making "a formal complaint to . . . the Superintendent of Schools for the SF
14   Archbishop."[7] After this complaint, Mr. Gallegos alleges, "the SF Archbishop conducted a sham
15   investigation" into the matter, and took no "effective remedial action . . . to end the conduct."[8] The
16   Archbishop's failure to investigate or correct the misconduct has, in Mr. Gallegos's view,
17   "emboldened" Riordan staff (meaning, apparently, the supervisor "and his agents") to continue
18   retaliating in various ways against Mr. Gallegos.[9]

19

20

21

22   _____
     [2] On a Rule 12(f) motion, the court accepts the challenged allegations as true. *E.g., Stearns v. Select*
23   *Comfort Retail Corp.*, 763 F. Supp. 2d 1128, 1140 (N.D. Cal. 2010).

     [3] Compl. – ECF No. 1 at 2 (¶ 7).
24
     [4] *Id.*
25   [5] *Id.*

26   [6] *Id.* at 2 (¶ 8).

     [7] *Id.*
27
     [8] *Id.* at 3-4 (¶¶ 9, 11-12).
28   [9] *Id.* at 4 (¶ 12).

ORDER (No.16-cv-01588-LB)                    2

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

United States District Court
Northern District of California

### 2.   The challenged allegations

The Archbishop moves to strike two items from the complaint. First, he asks the court to strike the complaint's references to a "sham investigation." Second, he asks the court to strike a passage (comprising over two paragraphs) in which Mr. Gallegos recounts allegations and evidence from a different lawsuit: *Bohnert v. Roman Catholic Archbishop of San Francisco*, No. 14-cv-2854-WHO (N.D. Cal.). The salient core of the challenged allegations states that, after the Archbishop failed to sufficiently investigate Mr. Gallegos's grievance,

> discovery [in *Bohnert*] revealed that the Archbishop had notice of "a long history of sexually harassing conduct at its high schools, in particular the two all-boys schools, Riordan and Serra." Among the evidence adduced in Ms. Bohnert's case was the fact that "the harassment has been perpetrated by students, teachers and high level administrators. Yet the Archdiocese has taken little to no action to remediate." Further, included in the evidence cited by Ms. Bohnert in her August 2015 . . . opposition to the SF Archbishop's motion for summary judgment was the complaint that Mr. Gallegos and others made about [the Riordan supervisor] and the sham investigation that followed.

(ECF No. 1 at 3 [¶ 10].) Mr. Gallegos then complains that the revelation in *Bohnert* did not prompt the Archbishop to "reinvestigate" his own situation. (*Id.* at 4 [¶ 11].)

The *Bohnert* case settled and was dismissed in November 2015. *See Bohnert*, *supra* (Nov. 19, 2015) (order of dismissal upon settlement).[10] Mr. Gallegos filed this suit more than four months later, in late March 2016. (ECF No. 1.)

### GOVERNING LAW

Motions to strike are governed by Rule 12(f) of the Federal Rules of Civil Procedure. That rule provides: "The court may strike from a pleading . . . any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). "The function of a [Rule 12(f)] motion to strike is to avoid the unnecessary expenditures that arise throughout litigation by dispensing of any spurious issues prior to trial." *Rosales v. FitFlop USA, LLC*, 882 F. Supp. 2d 1168, 1178 (S.D. Cal. 2012)

---

[10] The court may judicially notice its own records. *See, e.g., EduMoz, LLC v. Republic of Mozambique*, 968 F. Supp. 2d 1041, 1049 (C.D. Cal. 2013) ("The court can take judicial notice of its own docket."); *Jacobsen v. Mims*, 2013 WL 1284242, *2 (E.D. Cal. Mar. 28, 2013) ("The Court may take judicial notice of court records."); Fed. R. Evid. 201(b).

(citing *Sidney-Vinstein v. A.H. Robins Co.*, 697 F.2d 880, 885 (9th Cir. 1983)). Striking is appropriate if it "will make trial less complicated or eliminate serious risks of prejudice to the moving party, delay, or confusion of the issues." *Sliger v. Prospect Mortg.*, 789 F. Supp. 2d 1212, 1216 (E.D. Cal. 2011).

"Immateriality" and "impertinence" under Rule 12(f) both speak to the relevance of challenged allegations. "'Immaterial' matter is that which has no essential or important relationship to the claim for relief or the defenses being pleaded." *Fantasy, Inc. v. Fogerty*, 984 F.2d 1524, 1527 (9th Cir. 1993), *rev'd on other grounds,* 510 U.S. 517 (1994) (quotation omitted). "'Impertinent' matter consists of statements that do not pertain, and are not necessary, to the issues in question." *Id.* Where a movant challenges allegations as immaterial or impertinent, "[a] court must deny the motion to strike if there is any doubt whether the allegations in the pleadings might be relevant in the action." *Oracle Am., Inc. v. Micron Tech., Inc.*, 817 F. Supp. 2d 1128, 1132 (N.D. Cal. 2011). "[G]enerally," then, courts grant such a motion "only where 'it is clear that the matter to be stricken could have no possible bearing on the subject matter of the litigation.'" *Rosales*, 882 F. Supp. 2d at 1179 (quoting *Walters v. Fid. Mortg. of Cal.,* 730 F. Supp. 2d 1185, 1196 (E.D. Cal. 2010) (citing in turn *Lilley v. Charren,* 936 F. Supp. 708, 713 (N.D. Cal. 1996)).

"Even where matter in a pleading is relevant to the controversy, it nonetheless may be stricken if it is scandalous or set out in 'needless detail.'" *Tucker v. Am. Int'l Grp., Inc.*, 936 F. Supp. 2d 1, 16 (D. Conn. 2013) (quoting *Cabble v. Rollieson*, 2006 WL 464078, *11 (S.D.N.Y. Feb. 27, 2006) and citing authorities). "Scandalous" under Rule 12(f) "generally refers to any allegation that unnecessarily reflects on the moral character of an individual or states anything in repulsive language that detracts from the dignity of the court." *Anderson v. Davis Polk & Wardwell LLP*, 850 F. Supp. 2d 392, 416 (S.D.N.Y. 2012) (quoting 2 J. Moore *et al.*, *Moore's Federal Practice* ¶ 12.37[3] (3d ed. 2010)). "Scandalous" has also been said to encompass allegations that "improperly cast a derogatory light on someone." *Asher & Simons, P.A. v. j2 Global Canada, Inc.*, 965 F. Supp. 2d 701, 704 (D. Md. 2013) (quoting 5C C. Wright *et al.*, *Federal Practice and Procedure* § 1382 (3d ed. 2011)).

"As a rule, motions to strike are regarded with disfavor because striking is such a drastic remedy; as a result, such motions are infrequently granted." *Amini Innovations Corp. v. McFerran Home Furnishings, Inc.*, 301 F.R.D. 487, 489-90 (C.D. Cal. 2014) (citing *Freeman v. ABC Legal Servs., Inc.,* 877 F. Supp. 2d 919, 923 (N.D. Cal. 2012) (citing in turn *Stanbury Law Firm v. IRS,* 221 F.3d 1059, 1063 (8th Cir. 2000)). "[W]hen ruling on a motion to strike," the court accepts the challenged allegations as true and "must liberally construe" those allegations "in the light most favorable" to the non-moving pleader. *Stearns v. Select Comfort Retail Corp.*, 763 F. Supp. 2d 1128, 1140 (N.D. Cal. 2010); *see, e.g., Multimedia Patent Trust v. Microsoft Corp.*, 525 F. Supp. 2d 1200, 1211 (S.D. Cal. 2007) ("In determining a motion to strike, a district court must view the pleadings in the light most favorable to the pleader.").

## ANALYSIS

To decide whether the challenged allegations are irrelevant — and, to a lesser degree, to decide whether they are merely scandalous — we must first recall what Mr. Gallegos must prove. To establish a claim for retaliation under Title VII, Mr. Gallegos must prove: 1) that he engaged in a "protected activity under Title VII"; 2) that the Archbishop subjected him to an "adverse employment action"; and 3) that the Archbishop did so because of Mr. Gallegos's protected conduct — *i.e.*, that the Archbishop retaliated against Mr. Gallegos. *E.g., Madril v. Circuit City Stores, Inc.*, 24 F. App'x 676, 678 (9th Cir. 2001); *see also, e.g., Univ. of Tex. Sw. Med. Ctr. v. Nassar*, 133 S. Ct. 2517, 2528 (2013) (Title VII retaliation requires but-for causation).

### 1. The "sham investigation" into the plaintiff's complaint

The defendant moves to strike the complaint's references to a "sham investigation." The court denies this motion. That the Archbishop insufficiently investigated Mr. Gallegos's complaint is one of the plaintiff's central grievances. It does seem unlikely that the alleged failure to investigate can itself constitute retaliation. *See Fincher v. Depository Trust and Clearing Corp.*, 604 F.3d 712, 721-22 (2nd Cir. 2010) (holding that, in ordinary retaliation case, failing to investigate a workplace complaint cannot be retaliation for making that same complaint). But Mr. Gallegos

does not seem to be arguing that the allegedly poor investigation was itself retaliatory. He instead argues that the Archbishop's lax investigatory efforts "emboldened" other employees (including Mr. Gallegos's supervisor) to "further" retaliate against him. (ECF No. 1 at 4 [¶ 12]; ECF No. 15 at 1-2.) It is at least "possible" that this line of argument will have a "bearing" on Mr. Gallegos's retaliation claim; the court thus denies the motion to strike this material as immaterial or impertinent. *See Oracle America,* 817 F. Supp. 2d at 1132; *Rosales*, 882 F. Supp. 2d at 1179.

## 2. Allegations from *Bohnert* lawsuit

### 2.1 The allegations are not scandalous

The defendant also moves to strike as scandalous the *Bohnert* allegations concerning a "long history of sexually harassing conduct at [diocesan] high schools . . . perpetrated by students, teachers and high[-]level administrators." (ECF No. 9 at 6; *see* ECF No. 1 at 3-4 [¶ 10].) The defendant contends that the "sole purpose of . . . these salacious allegations is to scandalize [the Archbishop] before a fact finder." (ECF No. 9 at 6.) The court disagrees. The challenged material is not scandalous within the meaning of Rule 12(f). The subject that the *Bohnert* material covers — inappropriate, sexually themed behavior in the workplace, including outright sexual harassment — is sensitive and unseemly. The topic naturally verges on the scandalous. But the challenged allegations themselves (ECF No. 1 at 3-4 [¶¶ 10-11]) do not go into "salacious" or "needless detail" and do not warrant striking.

### 2.2 The *Bohnert* allegations may be relevant

It is a closer question whether the *Bohnert* allegations should survive a relevance challenge. (Or, more accurately under Rule 12(f), a challenge to their "materiality" or "pertinence.") For the most part, the court does not see how the *Bohnert* allegations are material to the present case. The *Bohnert* case involved different claims, by a different plaintiff, growing from events at a different school. Insofar as they do touch upon events at Riordan, the *Bohnert* allegations seem only to refer to Mr. Gallegos's own situation (his experience at Riordan and his eventual allegations). It is unclear why such evidence should be permitted to come into this case indirectly, secondhand,

through the refracting lens of *Bohnert*, rather than just being proven directly in this lawsuit. In this main respect, the *Bohnert* allegations strike the court as mostly gratuitous.

The most effective argument that the plaintiff makes for the materiality and pertinence of the *Bohnert* allegations is that they will show that the Archbishop had notice of the events at Riordan, yet failed to stop the misconduct, and thus should incur punitive damages. (*See* ECF No. 15 at 2, 6.) "[I]t was during that case [*Bohnert*]," the plaintiff writes,

> that the conduct at Riordan . . . came to light . . . . Despite this actual notice, rather than finally addressing either the hostile environment about which Mr. Gallegos complained or the retaliation to which he has been subjected since he complained, to this day the Archbishop refuses to take action to remediate.

(*Id.* at 2.) The plaintiff argues that the Archbishop's "actual notice of the scandalous conduct" at Riordan is "centrally relevant to punitive liability." (*Id.*)

There are problems with the plaintiff's argument. The first is that it is conclusory. Despite this point's being "centrally important," the plaintiff does not show that the *Bohnert* allegations, which draw from a different lawsuit, can feed into the punitive calculus. The plaintiff should have done more to show that, under governing legal rules, given the specific circumstances of this case, material drawn from a loosely related lawsuit can indeed be admitted to help establish some aspect of punitive liability. The court generally is not inclined to accept arguments that are not usefully explicated.

The plaintiff's notice argument also suffers from a straightforward timing problem. According to the complaint, the "notice" in *Bohnert* arose *after* Mr. Gallegos had complained about incidents at Riordan and *after* the Archbishop had conducted a "sham investigation" into Mr. Gallegos's report. (ECF No. 1 at 2-3 [¶¶ 7-10].) As Mr. Gallegos describes matters in his complaint, he first complained to his supervisor at Riordan in "approximately September of 2013," and made a further, "formal complaint" to his supervisor's superior "[d]uring the summer of 2014." (*Id.* at 2 [¶¶ 7-8].) "[T]he SF Archbishop [then] conducted a sham investigation of Mr. Gallegos['s] allegations," the plaintiff continues; this was "[i]n late 2014." (*Id.* at 3 [¶ 9].) "*Thereafter*," the complaint says, "in . . . a lawsuit filed by Kimberly Bohnert . . . discovery revealed that the Archbishop had notice of a long history of sexually harassing conduct at its high schools,"

including Riordan. (*Id.* at 3 [¶ 10]) (emphasis added) (record quotation omitted). The timing problem is obvious.

That said, the court must liberally construe these matters in the light most favorable to Mr. Gallegos. And it must hesitate before striking material from a litigant's pleadings. Fuller development of this case may erase the apparent timing problem. The *Bohnert* allegations mention a "long history" of misconduct. (*Id.*) And, while the *Bohnert* material in the complaint seems to refer mainly to the events of which Mr. Gallegos complained, it is at least possible that the "long history" of misconduct would encompass events that preceded those involving Mr. Gallegos. Earlier events might have put the Archbishop on notice of problems at Riordan in a way that is relevant to Mr. Gallegos's case. It is still hard to imagine how the essential timing problem can be resolved — again, the complaint itself says that the *Bohnert* material "came to light" only after relevant events at Riordan — but, given the constraints that the court faces under Rule 12(f), the better course seems to be to give the plaintiff the benefit of the doubt.

There are also what might roughly be called logical problems with the plaintiff's notice argument. These go beyond the illogic inherent in the timing problem. They instead involve the fact that the *Bohnert* material seems mostly to be referring to Mr. Gallegos's experience at Riordan — so that the *Bohnert* allegations seem at best redundant, perhaps immaterial, or at worst circular. The complaint in this respect alleges:

> [I]ncluded in the evidence cited by Mrs. Bohnert in her August 2015 . . . opposition to the SF Archbishop's motion for summary judgment was the complaint that Mr. Gallegos and others made . . . and the sham investigation that followed.

(ECF No. 1 at 3 [¶ 10].) The plaintiff's Rule 12(f) briefing confirms that the *Bohnert* material is meant to show that the Archbishop knew both of the underlying events involving Mr. Gallegos and that diocesan officials had conducted only a "sham investigation" into them. (ECF No. 15 at 2.) The problem here seems clear. At most, the *Bohnert* allegations reflect someone else's assessment that the Riordan investigation was "bogus" — an unknown someone else — in which case, that would not have clearly provided the Archbishop with extrinsic notice that something was wrong. At worst, the *Bohnert* allegations are *merely reporting Mr. Gallegos's own charge* that the

United States District Court
Northern District of California

1    Archbishop had conducted a "sham investigation" into the situation at Riordan. That is indeed

2    how the *Bohnert* allegations struck the court upon reading. In which case, letting the *Bohnert*

3    material in would be a kind of circularity and bootstrapping. It cannot be proof of Mr. Gallegos's

4    allegations, after all, that someone else repeated his allegations.

5         The governing backstop rules nevertheless save the challenged material. Given the record

6    before it, and "liberally construing" the allegations "in the light most favorable" to Mr. Gallegos,

7    the court cannot say, beyond doubt, that the *Bohnert* allegations have "no possible bearing" on this

8    lawsuit. *See Oracle America*, 817 F. Supp. 2d at 1132 (doubt); *Rosales*, 882 F. Supp. 2d at 1179

9    ("no possible bearing"). The court will thus strike only that material that refers to incidents at

10   different high schools. It is entirely unclear how circumstances at another high school, involving a

11   different plaintiff, and different underlying events, can be relevant to whether the Archbishop

12   retaliated against Mr. Gallegos for engaging in protected activity with respect to events at Riordan.

13   The court thus strikes the following material from Paragraph 10 of the Complaint: "its high

14   schools, in particular the two all-boys high schools, . . . Serra." (*See* ECF No. 1 at 3 [¶ 10], lines

15   12-13.) The revised allegations would thus read, "a long history of sexually harassing conduct at

16   Riordan." The plaintiff need not use that exact language; and, of course, if the facts do not support

17   the allegation that Riordan alone had a "long history" of such misconduct, then the plaintiff should

18   further revise this passage. But references to events and complainants at other institutions must be

19   omitted. *See Amini Innovations*, 301 F.R.D. at 492-93 (striking references to allegations and

20   exhibits in a related case involving same parties); *Fantasy, Inc.*, F.3d at 1527-28 (district court

21   "properly struck" evidence showing alleged "pattern of abuse" that was not demonstrably relevant

22   to present claim and carried "strong likelihood" of prejudice to movant).

23                                              *   *   *

24        The court expresses no view on whether evidence relating to the challenged material will

25   ultimately be admissible. It may well happen that the allegations that have survived the

26   defendant's Rule 12(f) challenge will, in the context of a more fully developed case, and more

27   topically pointed and elaborated arguments, prove irrelevant or for some other reason be excluded.

28   That is another question for another day. For now, the court declines to strike the challenged

United States District Court
Northern District of California

material, except for the small segment noted above. *See Amini Innovations*, 301 F.R.D. at 491-92 (declining to strike based on Fed. R. Evid. 403 and 404 objections) ("Evidentiary objections to allegations are typically a non-issue at the pleading stage . . . ."); *In re Facebook PPC Advertising Litig.*, 709 F. Supp. 2d 762, 773 (N.D. Cal. 2010) (that target allegations might be "hearsay and minimally probative" did not constitute "undue prejudice" to justify striking).

## CONCLUSION

The court partly grants and partly denies the defendant's motion to strike. The plaintiff has 21 days from the date of this order to file an amended complaint that omits the struck material.

This disposes of ECF No. 9.

**IT IS SO ORDERED.**

Dated: June 7, 2016

_____
LAUREL BEELER
United States Magistrate Judge